**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, etc., | Case No. 13-cv-6705 (DLC) |
| Plaintiff, | Case No. 13-cv-6719 (DLC) |
| | Case No. 13-cv-6721 (DLC) |
| v. | Case No. 13-cv-6726 (DLC) |
| | Case No. 13-cv-6727 (DLC) |
| MORGAN STANLEY & CO., et al., | Case No. 13-cv-6731 (DLC) |
| | Case No. 13-cv-6736 (DLC) |
| Defendants. | |
| And other NCUA Actions. | |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, etc., | |
| Plaintiff, | |
| v. | Case No. 11-cv-2340 & 2649 (JWL) |
| | Case No. 12-cv-2591 (JWL) |
| RBS SECURITIES, INC., f/k/a GREENWICH CAPITAL MARKETS, INC., et al., | Case No. 12-cv-2648 (JWL) |
| | Case No. 13-cv-2418 (JWL) |
| Defendants. | |
| And other NCUA Actions. | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, etc., <br><br>                              Plaintiff, <br><br> v. <br><br> RBS SECURITIES, INC., f/k/a GREENWICH CAPITAL MARKETS, INC., et al., <br><br>                              Defendants. <br><br> And other NCUA Action. | Case No. 11-cv-5887 (GW) <br> Case No. 11-cv-6521 (GW) |

**NCUA'S SUPPLEMENTAL SUBMISSION
REGARDING THE MASTER DISCOVERY PROTOCOL**

As requested by the Court, NCUA makes this supplemental submission to address issued raised during the April 2, 2014 hearing regarding the Master Discovery Protocol ("MDP").

**I.    Depositions**

   **A.**   Deposition limits can and "should be set early in the litigation, before discovery has begun." Manual for Complex Litigation ("MCL") § 11.422 (4th ed. 2004); *see, e.g., In re Pilot Project Regarding Case Management Techniques for Complex Cases*, Ex. A ¶ 7(b) (S.D.N.Y. Oct. 31, 2011) (requiring the parties to propose "limitations on scope of discovery" in their initial pretrial conference report). Such limits "impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously." MCL § 11.422 (noting that time limits serve such purposes but that, "standing alone they may be insufficient to control discovery costs," and thus, "may be complemented by limits on the number and length of depositions").

   Not surprisingly, certain defendants either proposed deposition limits in earlier Rule 26(f) Reports or agreed that such limits should be set early in these cases, just after the MDL Petition was decided.[1] No good reason exists to depart from those positions now. Not only do the parties and the Court have the benefit of initial disclosures in each action setting forth persons with relevant knowledge, but they also can draw upon the lessons of similar RMBS litigation. It is therefore especially appropriate to set limits in this case at this time. Nor is there any prejudice in doing so. Limits can be modified for good cause after further discovery. *See* 4/2/14 Tr. 35:20-22.

   **B.**   The Court inquired whether NCUA should be limited to ten depositions of the current and former employees of a Defendant Group if that Defendant Group has substantially

---

[1] *See* NCUA-Credit Suisse Planning Report at 19-20 (Feb. 7, 2014) (Ex. A) (stating deposition limits should be set "after the determination of the MDL Petition, as *at that point* the parties will be able to negotiate and enter into a full deposition protocol" (emphasis added); NCUA-RBS Planning Report at 23 (Dec. 20, 2013) (Ex. B); Joint Rule 26(f) Report § I(E), *NCUA v. RBS Sec., Inc.*, No. 11-5887, ECF No. 212 (C.D. Cal. Oct. 15, 2013); Joint Rule 26(f) Report § I(D), *NCUA v. Goldman, Sachs & Co.*, No. 11-6521, ECF No. 173 (C.D. Cal. Aug. 19, 2013).

completed discovery in a "materially similar RMBS case." *Id.* at 26:25-27:4, 41:21-25. The Court also inquired whether the presumptive time limit for a deposition of a party-witness should be one seven-hour day (exclusive of breaks) if that witness has previously been deposed for at least two seven-hour days in such similar RMBS actions.[2] *Id.* at 27:21-25. NCUA agrees these presumptive limitations are proper as long as NCUA receives all deposition transcripts and affidavits, including exhibits, from the materially similar RMBS cases and investigations, and provided that those statements are admissible in these actions.[3] However, these limits would be problematic if the Court adopts Defendants' proposal to restrict the production of deposition transcripts to only document custodians and noticed deponents (not all persons with relevant knowledge), and further, to admit only certain portions of those depositions. *See* MDP § 7(e). Those limitations would force NCUA to depose persons who might not need to be deposed if their prior transcripts could be reviewed and used in this litigation, thereby creating needless work.

    **C.**    The Court asked about the first sentence of Defendants' proposal in § 7(a) of the MDP: that "[f]act depositions of a party witness taken in any of the above-captioned cases will be deemed to have been taken in all of the above-captioned cases in which that party is a plaintiff or defendant." *See* 4/2/14 Tr. 26:18-25. As NCUA has explained, this limitation imposes an unnecessary restriction in certain circumstances where an RMBS is common to multiple defendants. For example, multiple Defendant Groups may be defendants for the same RMBS because they were co-underwriters (*e.g.*, UBS and RBS co-underwrote NAA 2006-AR4). In such cases, one defendant's testimony may be relevant to showing falsity (*e.g.*, that the loans underlying the RMBS did not

---

    [2]    To answer a related question posed by the Court: none of the four liquidated credit unions (or NCUA) has substantially completed discovery in a materially similar RMBS action.

    [3]    *See* MDP § 7(e); FHFA 11/6/12 Tr. 54:20-55:7 (Ex. C) ("The defendants and FHFA have to provide the testimony from RMBS witnesses and investigations and litigation, whether it's given by deposition, affidavit, or declaration, and they have an ongoing duty to supplement."); *FHFA v. Merrill Lynch & Co.*, 2014 WL 798385 (S.D.N.Y. Feb. 28, 2014) (prior depositions admissible where "same motive" to object exists).

comply with the underwriting guidelines); that testimony also would be relevant to other defendants for that RMBS. Similarly, for co-underwritten RMBS, one co-underwriter may seek to establish a due diligence defense based in part on the due diligence performed by the other co-underwriter. That is, RBS may argue that the due diligence performed by UBS on NAA 2006-AR4 is relevant to RBS's due diligence defense (and vice versa). It would be inefficient to prevent testimony regarding a particular RMBS from being used in all cases involving that RMBS.

However, NCUA recognizes that all defendants should not be required to attend all depositions, and therefore proposes the following modification to ensure admissibility in relevant cases while minimizing the burden on Defendants of attending unnecessary depositions:

> Fact depositions of a party witness taken in any of the above-captioned cases will be deemed to have been taken in all of the above-captioned cases in which that party is a plaintiff or defendant. The fact deposition of a party witness will be deemed to have been taken in actions involving another Defendant Group (1) where the other Defendant Group is also a defendant for an RMBS at issue in the fact deposition and NCUA provides notice of such fact deposition to the other Defendant Group; (2) by agreement of the parties; or (3) upon a showing of good cause.

## II. Notice of Counter-samples

**A.** The Court asked: "if a defendant is choosing to re-underwrite a counter-sample, when it should first give notice of that sample." 4/2/14 Tr. 42:10-23. Just as NCUA will provide notice to Defendants of the loans NCUA will re-underwrite five months before serving those expert reports, *see* MDP § 9(h), so too should Defendants should give NCUA notice of the loans in their counter-sample five months before serving such expert reports. This five-month notice ensures the parties have sufficient time to rebut each other's re-underwriting analyses. It is especially important for NCUA to have as much advance notice as possible because NCUA must simultaneously re-underwrite counter-samples from all Defendant Groups, while each Defendant group only needs to re-underwrite the samples NCUA has provided to that Defendant group.

Defendants also should present their re-underwriting analysis of any counter-sample in an affirmative expert report. *See* MDP § 8(b). Allowing Defendants to present such analyses in their

- 3 -

rebuttal expert reports would limit NCUA to only one month to respond to such analysis in NCUA's reply reports rather than the two months Defendants have to respond to similar analyses in their rebuttal reports. *See* MDP § 8(a). Moreover, NCUA would have only one month to perform that task for the counter-samples identified by *every* Defendant group, while each Defendant group would have twice as much time to address just the loans NCUA has re-underwritten as to that Defendant group.

**B.**   As an additional feature of requiring Defendants to identify their counter-samples in advance, the Court also should implement a cost-shifting mechanism to prevent unnecessary expenditures. By identifying counter-samples, a Defendant Group may be incentivized to identify an overly large number of loans that it "intends" to re-underwrite – and then not do so. That would force NCUA to bear the considerable expense of attempting to re-underwrite those loans in anticipation of an expert report, only to have those efforts be wasted when the other side fails to produce the report or re-underwrites only a subset of the loans identified. To avoid such a situation, NCUA proposes a cost-shifting mechanism to ensure the parties – NCUA as well as Defendants – identify only the loans they actually intend to re-underwrite:

> If a party or its expert does not re-underwrite at least 80% of the loans that the party stated it intended to re-underwrite in connection with an expert report, that party shall pay any re-underwriting expenses incurred by the opposing party for any loans that were not re-underwritten.

**III.   Duty To Produce Responsive Documents That Are Not Captured by Search Terms**

The Court invited further briefing as to whether there should "be a general duty to search ESI for responsive documents even if they were not captured by the search terms" and whether "that obligation [should] be restricted to non-ESI material." 4/2/14 Tr. at 26:5-14; *see also* MDP § 5(e). There is such a duty, and it is not restricted to non-ESI material. Parties "must conduct a diligent search [for responsive documents], which involves developing a reasonably comprehensive search strategy." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Such a strategy may

involve the manual collection of "files that are likely to be relevant to the claims in the litigation," and it may also involve "'identify[ing] potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms.'" *Id.* (quoting *The Sedona Principles; Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Principle 11 ("Sedona")).

NCUA's proposal implements these principles. For certain categories of documents, a party may reasonably employ search terms. But if those search terms fail to capture "documents reasonably known by a party to be responsive, or capable of being known to be responsive upon the exercise of due diligence," the party should employ other search methods to make sure those documents are produced. MDP § 5(e). For example, relevant policies and procedures, and relevant databases containing loan-level information likely will not be captured by search terms restricted to certain custodians. These are typically centrally located documents with no relation to a particular custodian, and thus, they must be produced by other means.

Notably, Defendants agreed to this principle in the *FHFA* cases: "The parties further agree that the use of search terms may not relieve any party of its duty to search for, collect, and produce non-privileged responsive documents that are not amenable to collection through the use of search terms, nor of its duty to produce non-privileged responsive documents of which it becomes aware." Stipulation Regarding Electronic Discovery, *FHFA v. UBS Am., Inc.*, No. 11-5201, ECF No. 54 at 6 (S.D.N.Y. Feb. 6, 2012). Indeed, "because knowledge of the producing party's data is usually asymmetrical, it is possible that refusing to 'aid' opposing counsel in designing an appropriate search protocol that the party holding the data knows will produce responsive documents could be tantamount to concealing relevant evidence." The Sedona Conference, *The Case for Cooperation*, 10 Sedona Conf. J. 339, 344 (2009); *see also Moore v. Publicis Groupe*, 287 F.R.D. 182, 190-91 (S.D.N.Y. 2012) (noting that, although "[k]eywords have a place in production of ESI," they also may be deficient in certain circumstances).

Dated:  April 4, 2014                                          Respectfully submitted,

  /s/ David C. Frederick

| | |
|---|---|
| Erik Haas | David C. Frederick |
| Peter W. Tomlinson | Wan J. Kim |
| Philip R. Forlenza | Gregory G. Rapawy |
| Michelle W. Cohen | Andrew C. Shen |
| PATTERSON BELKNAP WEBB & TYLER LLP | KELLOGG, HUBER, HANSEN, TODD, |
| 1133 Avenue of the Americas |    EVANS & FIGEL, P.L.L.C. |
| New York, NY 10036 | Sumner Square |
| Tel:  (212) 336-2000 | 1615 M Street, N.W., Suite 400 |
| Fax:  (212) 336-2222 | Washington, DC 20036 |
| ehaas@pbwt.com | Tel:  (202) 326-7900 |
| pwtomlinson@pbwt.com | Fax:  (202) 326-7999 |
| pforlenza@pbwt.com | dfrederick@khhte.com |
| mcohen@pbwt.com | wkim@khhte.com |
| | grapawy@khhte.com |
| David H. Wollmuth | ashen@khhte.com |
| Frederick R. Kessler | |
| Steven S. Fitzgerald | George A. Zelcs |
| Ryan A. Kane | KOREIN TILLERY LLC |
| WOLLMUTH MAHER & DEUTSCH LLP | 205 North Michigan Avenue, Suite 1950 |
| 500 Fifth Avenue, 12th Floor | Chicago, IL 60601 |
| New York, NY 10110 | Tel:  (312) 641-9760 |
| Tel: (212) 382-3300 | Fax:  (312) 641-9751 |
| Fax: (212) 382-0050 | gzelcs@koreintillery.com |
| dwollmuth@wmd-law.com | |
| fkessler@wmd-law.com | Stephen M. Tillery |
| sfitzgerald@wmd-law.com | Greg G. Gutzler |
| rkane@wmd-law.com | Peter H. Rachman |
| | Robert L. King |
| | KOREIN TILLERY LLC |
| | 505 North Seventh Street, Suite 3600 |
| | St. Louis, MO 63101 |
| | Tel:  (314) 241-4844 |
| | Fax:  (314) 241-3525 |
| | stillery@koreintillery.com |
| | ggutzler@koreintillery.com |
| | prachman@koreintillery.com |
| | rking@koreintillery.com |

*Attorneys for Plaintiff National Credit Union Administration Board*