# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

May 2, 2014

By ECF

The Honorable Denise L. Cote,
   United States District Court for the Southern District of New York,
     Daniel Patrick Moynihan U.S. Courthouse,
      500 Pearl Street,
        New York, New York 10007

The Honorable George H. Wu,
   United States District Court for the Central District of California,
     312 North Spring Street,
       Los Angeles, California 90012.

The Honorable John W. Lungstrum,
   United States District Court for the District of Kansas,
     500 State Avenue, Suite 517,
       Kansas City, Kansas 66101.

The Honorable James P. O'Hara,
   United States District Court for the District of Kansas,
     500 State Avenue, Suite 517,
       Kansas City, Kansas 66101.

        Re: *National Credit Union Administration Board* v. *Goldman, Sachs & Co. et al.*, No. 13-cv-6721 (S.D.N.Y.) ("New York Action"); *National Credit Union Administration Board* v. *Goldman, Sachs & Co. et al.*, No. 11-cv-6521 (C.D. Cal.) ("California Action"; collectively with the New York Action, the "Actions")

-2-

Dear Judges Cote, Wu, Lungstrum and O'Hara:

       I write on behalf of defendants Goldman, Sachs & Co. and GS Mortgage Securities Corp. (collectively, "Goldman Sachs") in accordance with the Master Discovery Protocol and the April 22, 2014 Order entered in the Actions. NCUA and Goldman Sachs have had productive discussions concerning the search protocol applicable to Goldman Sachs, but have been unable to reach agreement on the Goldman Sachs custodians whose e-mails should be reviewed in these Actions. NCUA has yet to identify all of the additional custodians it believes Goldman Sachs should add, although NCUA recently indicated that it would be amenable to proposing the addition of certain custodians to replace others that Goldman Sachs previously designated. As a result, while the parties have not yet reached agreement, Goldman Sachs believes that further discussions with NCUA may be productive.

       Goldman Sachs sought to avoid burdening the Courts with a dispute as to the number of custodians and therefore offered an excessive number of custodians (31) to NCUA, which exceeds the 28 custodians NCUA has offered for three separate credit unions and NCUA itself. These 31 people worked on the 14 securitizations at issue in the Actions and were responsible for the matters relevant to the parties' claims and defenses: (1) acquiring whole loans for securitization; (2) structuring the securitizations; (3) drafting offering documents; (4) pricing the securitizations; (5) performing due diligence on the loans, originators and securitizations; (6) monitoring originators and loan pools, including repurchase functions; and (7) marketing and selling the securitizations, including to the credit unions. The individuals identified by Goldman Sachs are those most likely to have the information NCUA seeks. Goldman Sachs has also offered to search more than 10 categories of document repositories—including its due diligence folders for each relevant loan purchase, its due diligence folders for each relevant originator, its deal files for the securitizations, and its repurchase/early-payment default centralized folders—in addition to e-mail searches. Goldman Sachs's proposal is more than reasonable; indeed, although Goldman Sachs believes that the appropriate number of custodians should be far less than 31, it offered that level to NCUA in an attempt to avoid a dispute.

       NCUA has complained that Goldman Sachs failed to provide information as to why 74 *additional* individuals NCUA identified (for a total of 105 custodians) were not designated as custodians. In response, Goldman Sachs provided NCUA with extensive explanations of its rationale, both in writing and in meet-and-confer discussions (including a three-hour meet-and-confer call earlier this week), as to why each and every one of the 74 additional custodians NCUA has requested—including every person named on working group lists and Goldman Sachs's initial disclosures (most, if not all, of whom reported to custodians Goldman Sachs has proposed) and other current and former Goldman Sachs employees with no connection to these securitizations—is unlikely to

possess relevant documents or documents that are not duplicative of those from a custodian previously designated by Goldman Sachs.[1] In contrast, NCUA not only has designated *fewer* custodians (28) across *four separate institutions* (U.S. Central, WesCorp, Southwest, and NCUA), it also has offered no reason why Goldman Sachs should designate as many custodians (no less more) as NCUA has for *four* institutions.

NCUA has also requested a list of every custodian Goldman Sachs designated in *FHFA*, which Goldman Sachs has since provided. As Goldman Sachs has explained, however, the *FHFA* litigation involves different claims (including fraud claims), significantly more securitizations, and numerous custodians with no involvement in the securitizations at issue in the Actions. Further, Goldman Sachs has already designated as a custodian here any *FHFA* custodian who worked on any of the securitizations that overlap across the *FHFA* litigation and these Actions. As Judge Cote previously stated in response to assertions made by NCUA about *FHFA*, "every case is its own case and needs to have a schedule and treatment that is appropriate to it." (Nov. 14, 2013 Tr. at 8-9.) Goldman Sachs disagrees with NCUA's implicit contention that all custodians in the *FHFA* litigation must be designated as custodians in these Actions.

NCUA stated for the first time two days ago that it would be willing to propose the addition of certain Goldman Sachs custodians to replace others that Goldman Sachs previously designated. Goldman Sachs has asked NCUA for a complete list of the additional custodians it seeks, and is hopeful that the parties can reach agreement.[2]

---

[1] Despite Goldman Sachs's request, NCUA was unable on the parties' recent meet-and-confer call to respond to Goldman Sachs's request for explanations as to why certain individuals at NCUA and the credit unions had not been designated as custodians.

[2] With respect to the date range applicable to Goldman Sachs's e-mail search, the parties have reached agreement on a start date and end date applicable to Goldman Sachs's custodians, but NCUA also seeks an expanded, special date range applicable to a portion of the custodians to which the parties ultimately agree. NCUA and Goldman Sachs agreed on April 17, 2014 that custodians for any such expanded period, if any, would not be decided until after the parties had agreed on a universe of custodians for the normal date range.

A separate letter will be filed by all defendants concerning the negotiation of search terms. The only Goldman Sachs-specific issue on search terms is that NCUA believes that search terms *pertaining to a particular deal* should nonetheless be run in an Action where that deal is *not* at issue. Goldman Sachs believes that search terms specific to securitizations *only* at issue in the New York Action should not be run on custodians designated *only* in the California Action (and vice versa).

-4-

Respectfully submitted,

/s/ Richard H. Klapper
Richard H. Klapper

cc:   All counsel of record (by ECF)