# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

**MANDATE**

N.Y.S.D. Case # 13-cv-6721(DLC)

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand and fourteen.

Before:     Ralph K. Winter,
                Pierre N. Leval,
                Gerard E. Lynch,
                     *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 13, 2015

National Credit Union Administration Board,

As liquidating agent of Southwest corporate federal credit union,

    Plaintiff - Appellee,

**JUDGMENT**
Docket No. 14-312

v.

Goldman, Sachs & Co., GS Mortgage Securities Corp.,

    Defendants - Appellants.

_____

      The appeal in the above captioned case from an order of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

      IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's order denying Appellants' motion to compel arbitration is AFFIRMED .

                                               For The Court:

                                               Catherine O'Hagan Wolfe,
                                               Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 02/13/2015

Case 1:13-cv-06721-DLC Document 157 Filed 02/03/15 Page 2 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: June 20, 2014       Decided: December 23, 2014)

Docket No. 14-312-cv

------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION BOARD, as liquidating agent of Southwest Corporate Federal Credit Union,

*Plaintiff-Appellee*,

v.

GOLDMAN, SACHS & CO. AND GS MORTGAGE SECURITIES CORP.,

*Defendant-Appellants*.

------------------------------------------------------------X


Before: WINTER, LEVAL, and LYNCH, *Circuit Judges*:

Goldman, Sachs & Co. and GS Mortgage Securities Corp. (collectively, "Goldman") appeal from the order of the United States District Court for the Southern District of New York (Cote, *J*.) denying Goldman's motion to compel arbitration of a suit brought against it by the National Credit Union Administration Board ("NCUA") acting as liquidating agent for a failed credit union. Goldman based its arbitration demand on an arbitration clause appearing in a Cash Account Agreement between Goldman and the failed credit union. NCUA opposed the motion to compel on the grounds that it had repudiated the agreement pursuant to its statutory authority. The Court of Appeals concludes that NCUA validly repudiated the arbitration agreement. AFFIRMED.

RICHARD H. KLAPPER (William B. Monahan, Peter A. Steciuk, Mark S. Geiger, *on the brief*), Sullivan & Cromwell LLP, New York, NY, for *Defendant-Appellants*

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

DAVID C. FREDERICK (Wan J. Kim, Gregory G. Rapawy, Christopher B. Brown, *on the brief*), Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., George A. Zelcs, Korein Tillery LLC, Chicago, IL, Michael J. McKenna, John K. Ianno, National Credit Union Administration, Alexandria, VA, for *Plaintiff-Appellee*

Leval, *Circuit Judge*:

Goldman, Sachs & Co. and GS Mortgage Securities Corp. (collectively, "Goldman") appeal from an order of the United States District Court for the Southern District of New York (Cote, *J.*) denying Goldman's motion to compel arbitration of a suit brought against it by the National Credit Union Administration Board ("NCUA").[1] NCUA brought this action as liquidating agent for Southwest Corporate Federal Credit Union ("Southwest"), a failed credit union. NCUA's complaint alleged that Goldman violated federal and state securities laws in its dealings with Southwest prior to Southwest's failure. Goldman sought arbitration of the claims, citing an arbitration clause included in a 1992 Cash Account Agreement ("CAA") between Goldman and Southwest. NCUA rejected Goldman's demand, asserting that, pursuant to its statutory powers as Southwest's liquidating agent under 12 U.S.C. § 1787(c), it was repudiating the

---

[1] This opinion uses the acronym "NCUA" to refer without distinction to the National Credit Union Administration and the National Credit Union Administration Board, which is charged by statute with the management of the Administration's affairs. *See* 12 U.S.C. § 1752a.

Case 1:13-cv-06721-DLC Document 157 Filed 02/13/15 Page 4 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

1   agreement. The district court ruled that NCUA had validly repudiated its agreement to

2   arbitrate, and denied Goldman's motion.

3       On appeal, Goldman argues that NCUA's repudiation power does not extend to

4   arbitration clauses. In the alternative, Goldman argues that (1) the district court failed to

5   appropriately scrutinize NCUA's determination that the contract was burdensome, and

6   (2) the repudiation was invalid because it was not done within a reasonable period

7   following NCUA's appointment as liquidating agent.

8       We conclude that NCUA successfully repudiated the Cash Account Agreement,

9   including the arbitration provision. We therefore affirm the district court's order denying

10  arbitration.

11  **BACKGROUND**

12      NCUA is a federal agency, which charters and regulates federal credit unions.

13  Among other duties, the agency insures the deposits of account holders in all federal

14  credit unions through the National Credit Union Share Insurance Fund ("Share Insurance

15  Fund"). The Share Insurance Fund is financed by deposits from all federally insured

16  credit unions and "backed by the full faith and credit of the U.S. Government." *Share*

17  *Insurance Overview*, National Credit Union Administration,

18  http://www.ncua.gov/DataApps/Pages/SI-NCUA.aspx (last visited Dec. 18, 2014); *see* 12

19  U.S.C. § 1782(c). If an insured credit union is in a precarious financial condition, NCUA

20  has the power to place the credit union under conservatorship or into liquidation. 12

21  U.S.C. §§ 1786(h), 1787.

Case 14-312, Document 81-2, 02/15/2017, Filed 02/13/15, Page 5 of 19
Case 1:13-cv-06721-DLC Document 157 Filed 02/13/15 Page 5 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

1    Southwest was a "corporate credit union," a class of credit union that provides

2    liquidity, investment and financial services to other, consumer-owned credit unions.

3    Southwest served over 1,300 consumer-owned credit unions, which in turn provided

4    services to approximately 33 million consumers. Between 2006 and 2007, Southwest

5    purchased from Goldman three certificates for residential mortgage-backed securities

6    ("RMBS") totaling $40 million. The RMBS were rated triple-A at the time they were

7    issued. Within a few years, however, they were downgraded to below investment grade,

8    resulting in substantial diminution in their market value.

9    On September 24, 2010, NCUA placed Southwest into conservatorship, and on

10   October 31, 2010, into involuntary liquidation, with NCUA serving as liquidating agent.

11   As liquidating agent, NCUA acquired all rights, titles, powers, and privileges of

12   Southwest, including the right to bring litigation on its behalf.

13                                    **PROCEDURE**

14   On September 23, 2013, NCUA filed suit against Goldman in the Southern District

15   of New York. The complaint alleged that Goldman violated federal and state securities

16   laws by making untrue statements and omissions of material fact in the offering

17   documents covering the sales of the RMBS. In response, Goldman sent a letter to NCUA

18   dated October 8, 2013, requesting that NCUA submit the claims to arbitration. Goldman

19   attached the CAA, which provided that it governed "individually and collectively all

20   accounts which [Southwest] may maintain with [Goldman]" and that "[a]ny controversy

21   between [Southwest and Goldman] arising out of or relating to this Agreement or the

Case 1:13-cv-06721-DLC Document 157 Filed 02/19/15 Page 6 of 19
Case 14-312, Document 89-1, 09/15/2015, 1602094, Page5 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

accounts established hereunder, shall be settled by arbitration . . . ." Joint App'x ("JA") at 174.

On October 17, 2013, NCUA refused Goldman's demand for arbitration. NCUA asserted that it was repudiating the CAA pursuant to its statutory authority under 12 U.S.C. § 1787(c). Section 1787(c) authorizes a liquidating agent for an insured credit union to "repudiate any contract" if the liquidating agent determines, in its discretion, that performance of the contract would be "burdensome" and repudiation of the contract would "promote the orderly administration of the credit union's affairs." 12 U.S.C. § 1787(c)(1). NCUA attached a letter of its agent Mike Barton stating his determination that "continuation of [the CAA] would be burdensome and would hinder the orderly administration of the affairs of Southwest." JA 178.

On November 13, 2013, Goldman moved in the district court to compel arbitration, citing the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*[2] NCUA opposed, arguing, *inter alia*, that it had repudiated the CAA, rendering the arbitration provision unenforceable. The district court agreed and denied Goldman's motion. Goldman brought this appeal.

---

[2] Section 4 of the Act permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 3 provides for the district court to stay the court proceedings pending arbitration. *Id.* § 3.

Case 1:13-cv-06721-DLC Document 152 Filed 02/19/15 Page 7 of 19
Case 14-312, Document 89-1, 02/15/2016, 1704035, Page7 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

# DISCUSSION

## I. NCUA's Power to Repudiate an Arbitration Agreement

Goldman argues that NCUA's repudiation power does not extend to arbitration provisions within a repudiated contract. We disagree and conclude that NCUA was empowered by statute to repudiate the agreement to arbitrate contained in the CAA.

Section 1787(c) was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (1989). Congress passed FIRREA in the wake of the savings and loan crisis, with the purpose of "stem[ming] the financial hemorrhaging resulting from the large number of failures in the thrift industry." *Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 674 (2d Cir. 1995) (internal quotation marks omitted). FIRREA sought to "put the Federal deposit insurance funds on a sound financial footing," "provide funds . . . to deal expeditiously with failed depository institutions," and "strengthen the enforcement powers of Federal regulators of depository institutions." FIRREA § 101, 103 Stat. at 187.

FIRREA addressed NCUA's powers and responsibilities as conservator or liquidating agent for a failed credit union. FIRREA § 1217, 103 Stat. at 530. Among these, FIRREA granted NCUA the power to repudiate contracts of the failed credit union. FIRREA § 1217(c), 103 Stat. at 537 (codified as amended at 12 U.S.C. § 1787(c)). Section 1787(c) provides:

> (c) Provisions relating to contracts entered into before appointment of conservator or liquidating agent

Case 1:13-cv-06721-DLC Document 157 Filed 02/13/15 Page 8 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

 (1) Authority to repudiate contracts

 In addition to any other rights a conservator or liquidating agent may have, the conservator or liquidating agent for any insured credit union *may disaffirm or repudiate any contract or lease*--

 (A) to which such credit union is a party;

 (B) the performance of which the conservator or liquidating agent, in the conservator's or liquidating agent's discretion, determines to be burdensome; and

 (C) the disaffirmance or repudiation of which the conservator or liquidating agent determines, in the conservator's or liquidating agent's discretion, will promote the orderly administration of the credit union's affairs.

 (2) Timing of repudiation

 The conservator or liquidating agent appointed for any insured credit union shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

*Id.* § 1787(c)(1)-(2) (emphasis added).

  Under these provisions, NCUA, as liquidating agent, is empowered to repudiate "any" contract of the failed entity upon NCUA's determination, in its discretion, that the contract is burdensome or that repudiation will promote the orderly administration of the credit union's affairs. In interpreting 12 U.S.C. § 1821(e),[3] a provision materially identical to § 1787(c), this court has interpreted the term "contract" to mean "a promissory agreement between two or more persons that creates, modifies, or destroys a legal relation." *Diamond*, 45 F.3d at 672 (alterations omitted). Arbitration agreements are

---

[3] Section 1821(e), which was also enacted as part of FIRREA, granted essentially identical powers to the Federal Deposit Insurance Corporation ("FDIC") and Resolution Trust Corporation ("RTC") to repudiate contracts of financial institutions for which those entities were appointed conservator or receiver. FIRREA § 212, 103 Stat. at 234; § 501, 103 Stat. at 370.

considered contracts. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principle that arbitration is a matter of contract."). Thus, on its face, § 1787(c) appears to authorize NCUA to repudiate an arbitration agreement.

Goldman opposes this plain reading by three related arguments. First, Goldman draws an analogy to bankruptcy law, relying on its interpretation of a precedential bankruptcy opinion. Goldman notes that the repudiation power codified in FIRREA was modeled in part on the Bankruptcy Code's authorization to a trustee in bankruptcy to reject executory contracts of the debtor. *See* 11 U.S.C. § 365(a) (authorizing a bankruptcy trustee, "subject to the court's approval," to "assume or reject any executory contract or unexpired lease of the debtor"); S. Rep. No. 101-19, at 314 (describing the FDIC's materially identical repudiation power as "incorporat[ing] rights and principles established at common law or in bankruptcy"); *see also 1185 Ave. of Ams. Assocs. v. RTC*, 22 F.3d 494, 497 (2d Cir. 1994) (noting that the bankruptcy trustee's rejection power "provides a helpful analogy" to repudiation under FIRREA). Goldman contends, based on its interpretation of *Truck Drivers Local Union No. 807, Int'l Bhd. of Teamsters v. Bohack Corp.*, 541 F.2d 312 (2d Cir. 1976), that an arbitration clause survives a bankruptcy trustee's rejection of the overall contract. It argues the same should apply to NCUA's repudiation of an overall cash account agreement containing an arbitration clause.

Case 1:13-cv-06721-DLC Document 157 Filed 02/13/15 Page 10 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

*Truck Drivers* involved a labor dispute between a truck drivers' union and an employer corporation. After the employer filed for bankruptcy, the union filed grievances against the employer via a grievance procedure established in the collective bargaining agreement. *Id.* at 314. The grievance committee made an award in favor of the union, and the employer refused to comply with the award. *Id.* at 315. Thereafter, the employer (acting as debtor-in-possession with the powers of a trustee) moved the bankruptcy court for permission to reject the collective bargaining agreement. *Id.* at 314 & n.1, 315. The union then petitioned in district court to compel the employer to "specifically perform its collective bargaining agreement . . . and to submit any grievances between them to grievance procedure." *Id.* at 316. The employer counterclaimed, seeking to submit the dispute to arbitration if so authorized by the bankruptcy court. The district court dismissed the union's petition to confirm the grievance award and remanded to the bankruptcy judge the "issue of the advisability of granting the debtor leave to arbitrate." *Id*. The union appealed. *Id.*

The issue on appeal to our circuit was whether it had been permissible for the parties to use the grievance procedure without first obtaining authorization from the bankruptcy court. Our court concluded that the bankruptcy court's authorization was necessary for arbitration to proceed even under the pre-existing collective bargaining agreement, and therefore the grievance award obtained by the union was unenforceable. *Id.* at 319-20. On remand, the bankruptcy judge was to determine whether to grant the employer's motion to reject the collective bargaining agreement and "whether to order

arbitration under its terms in any event, and on what issues." *Id.* at 321. We explained in a footnote:

> If the contract is rejected by the bankruptcy court, it will be deemed to have been breached as of the date of filing of the petition under Ch. XI. But like any other unilateral breach of contract, it does not destroy the contract so as to absolve the parties (particularly the breaching party) from a contractual duty to arbitrate their disputes. Hence, the provisions for arbitration could continue to support an order of the bankruptcy judge that the parties arbitrate their dispute . . . .

*Id.* at 321 n.15 (internal citations omitted). That is, even if the bankruptcy court approved rejection of the collective bargaining agreement, the court could still order arbitration under its terms.

While we did indeed rule that the debtor's purported rejection of the CBA would not *necessarily,* of its own force, terminate the obligation to arbitrate, we did not rule that, as a matter of law, termination of the overall agreement *cannot* terminate the obligation to arbitrate. We did not consider the question, much less decide, whether a trustee in bankruptcy is empowered by the bankruptcy law to free himself or herself from the debtor's preexisting contractual obligation to arbitrate. Goldman reads more into the *Truck Drivers* opinion than is there. Subsequent to *Truck Drivers*, our court treated as an open question whether a bankruptcy trustee may in some cases have the power to reject an arbitration agreement. *See Allegaert v. Perot*, 548 F.2d 432, 435 n.7 (2d Cir. 1977).

Furthermore, while the repudiation provisions of FIRREA were modeled in part on similar provisions of the Bankruptcy Code and therefore have features in common with them, there are also differences–significant for our purposes–between the roles of trustees

in bankruptcy and NCUA as liquidating agent for a failed institution. NCUA is a federal agency which has insured the credit union's accounts and sustained losses thereby upon the failure of the credit union. The Share Insurance Fund operated by NCUA is financed by deposits from all federally insured credit unions and guaranteed by the United States. The liquidation of a failed credit union thus implicates the finances of the broader federal credit union system, as well as the public fisc. In these respects, the interpretation of NCUA's powers is subject to considerations not pertinent to the powers of a bankruptcy trustee.[4]

   In short, for numerous reasons we reject Goldman's contention that *Truck Drivers* binds us to rule, or even gives substantial support to the proposition, that NCUA's statutory power to repudiate *any* contract does not encompass a power to repudiate an obligation to arbitrate, or that its repudiation of an overall agreement governing the relationship between the failed entity and another person or entity does not result in repudiation of an arbitration clause contained in the overall agreement.

---

[4] The facts of *Truck Drivers,* furthermore, were significantly different from ours in several respects. Among them, the employer had refused to comply with the grievance award even before it sought to reject the contract, and after seeking rejection, the employer itself asked the bankruptcy court to order arbitration of the dispute, though not pursuant to the CBA's grievance process. It is also notable that *Truck Drivers* involved a labor dispute, as to which there is a strong "federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements." *Bohack Corp. v. Truck Drivers Local Union No. 807, Int'l Bhd. of Teamsters*, 431 F. Supp. 646, 652 (E.D.N.Y.), *aff'd*, 567 F.2d 237 (2d Cir. 1977) (internal quotation marks omitted). That consideration is absent here.

Case 1:13-cv-06721-DLC Document 157 Filed 02/09/15 Page 13 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

Second, Goldman argues that repudiation constitutes a breach, and that at common law a party breaching a contract generally remains bound by the contract's terms. Repudiation of a contract did not relieve a party of the contractual obligation to arbitrate disputes under it. We think this common law rule has little bearing on whether § 1787(c)'s authorization of NCUA to repudiate any contract permits it to avoid arbitration if it finds that arbitration would be burdensome or detrimental to the orderly administration of the institution's affairs. Common law, unlike the statute, does not confer a right of repudiation. Rather, the common law recognizes repudiation as a form of breach. Breaching an obligation, needless to say, does not nullify it. Section 1787(c), in contrast to the common law rule, explicitly establishes NCUA's right to repudiate so as to avoid having to perform burdensome contractual obligations of the failed institution. Whether the repudiation constitutes a breach, giving rise to liability for damages caused by the breach, is another question and is irrelevant to whether, by repudiation under § 1787(c), NCUA can avoid having to arbitrate. We reject Goldman's argument.

Finally, Goldman argues that the repudiation of a contract does not extend to "purely procedural provisions" of the contract, and that arbitration provisions are therefore not subject to repudiation. Even assuming that an arbitration agreement should be considered "procedural," Goldman has furnished neither reason nor authority why such agreements as a class should be uniformly excluded from NCUA's repudiation power.

Case 1:13-cv-06721-DLC Document 157 Filed 02/09/15 Page 14 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

Section 1787(c) explicitly authorizes NCUA, in its role as the liquidating agent, to repudiate "any contract," with the purpose of avoiding burdensome obligations and facilitating the orderly wind-up of the failed credit union. We see no reason to interpret this grant of authority as excluding agreements to arbitrate. We conclude that § 1787(c)'s grant of authority to NCUA in its role as liquidating agent to repudiate contracts includes authority to repudiate arbitration agreements, and we reject Goldman's arguments that NCUA's repudiation of the CAA in this case should not be understood to encompass repudiation of the arbitration clause contained in the overall agreement.

## II.     Judicial Review of NCUA's "Burdensome" Determination

Goldman argues that even if NCUA was authorized to repudiate an agreement to arbitrate, the district court had an obligation under § 1787(c) to subject NCUA's burdensomeness determination to review for abuse of discretion and erred in failing to perform that review. The district court explained, "[A]s NCUA . . . exercised its statutory discretion to deem the contract between Southwest and Goldman Sachs burdensome, th[e] Court will not second-guess that determination." JA 214.

Section 1787(c) is ambiguous as to whether the liquidating agent's determination of burdensomeness is subject to judicial review. It provides that a liquidating agent may disaffirm or repudiate any contract

> (B) the performance of which the . . . liquidating agent, in the . . . liquidating agent's discretion, determines to be burdensome; and

> (C) the disaffirmance or repudiation of which the . . . liquidating agent determines, in the . . . liquidating agent's discretion, will promote the orderly administration of the credit union's affairs.

13

12 U.S.C. § 1787(c)(1). This language could reasonably be interpreted either as delegating absolute unreviewable repudiation power to the liquidating agent, or as calling for deferential judicial review of whether the liquidating agent abused its discretion. Our court has not conclusively addressed whether the statute calls for judicial review in this context.[5]

It is not clear, furthermore, whether the district court, in saying that it would not "second-guess [NCUA's] determination," meant that it regarded NCUA's discretionary determination as exempt from judicial review, or that it believed the determination was clearly within the scope of permissible discretion.

We have no need in this appeal to resolve either question. Even if we concluded that judicial review for abuse of discretion is required, and interpreted the district court's decision as having erroneously failed to undertake that compulsory review, the error would be harmless.

Goldman advances no reasonable argument why NCUA's determination that the arbitration agreement was burdensome and would hinder the orderly administration of

---

[5] In *1185 Avenue of Americas Associates*, the appellant argued that the RTC, exercising its parallel repudiation power under Section 1821(e), was required to submit evidence showing that it had made the requisite finding that the repudiated contract was burdensome. The court rejected the proposition that the RTC was required to make a formal finding that the contract was burdensome, and added (1) "it c[ould] hardly be said that it was not reasonable for the RTC to find" that the contract at issue was burdensome, and (2) "whether the [contract] [wa]s burdensome [wa]s to be decided at the discretion of the conservator or receiver." *1185 Ave. of Ams. Assocs.*, 22 F.3d at 498. As we understand that ruling, it left open the question whether, notwithstanding deference, some judicial review for abuse of discretion is nonetheless required.

Case 1:13-cv-06721-DLC Document 157 Filed 02/09/15 Page 16 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

Southwest's affairs should be found an abuse of discretion. Depending on the facts of any particular dispute, the party's litigating posture in it, and innumerable other factors, a party might reasonably find relative burden or advantage in arbitration or court litigation. Because arbitration awards are reviewed on an extremely deferential standard and are generally upheld so long as the award draws its essence from the agreement and does not manifestly disregard the governing law or exhibit bias or corruption, *see* 9 U.S.C. § 10(a); *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451-52 (2d Cir. 2011); *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85-86 (2d Cir. 2009), the more one believes one might find some advantage in the availability of full appellate review, the more one might reasonably conclude that arbitration would be burdensome and disadvantageous. Furthermore, a litigant who contemplates being involved in numerous arguably related litigations has a better chance of coordination of the various proceedings, at least to the extent the party considers coordination advantageous, in court proceedings than in arbitration. At the time Goldman sought arbitration, NCUA was in the process of litigating multiple actions on behalf of liquidated credit unions against underwriters of RMBS, including another suit against Goldman. As NCUA in its role as liquidating agent of failed institutions represents the public interest, the statute gives it wide discretion in deciding whether to repudiate those institutions' contracts. The record reveals no basis whatever for us to conclude that NCUA's decision to repudiate this arbitration agreement

Case 1:13-cv-06721-DLC Document 152-2 Filed 02/09/15 Page 17 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

was not within the discretion granted to it by the statute.[6]

### III. Whether NCUA Repudiated Within a "Reasonable Period"

Goldman contends NCUA's repudiation should be disallowed because it was untimely. Section 1787(c) requires a liquidating agent to determine whether or not to exercise the rights of repudiation "within a reasonable period following [the liquidating agent's] appointment." 12 U.S.C. § 1787(c)(2). NCUA was appointed as liquidating agent for Southwest on October 31, 2010. It did not repudiate the CAA until October 17, 2013, nearly three years later. Goldman contends the delay was not reasonable.

NCUA counters that the three-year delay was reasonable because it was not aware of the CAA's existence until Goldman brought the contract to its attention during this litigation. In support of the reasonableness of its delay, NCUA submitted a declaration of Debora Richter of NCUA's Asset Management and Assistance Center (the "Center"). The Center is responsible for managing and preserving the records of credit unions that NCUA places under conservatorship or liquidation. Richter's declaration averred that in

---

[6] Goldman argues that, because arbitration is widely believed to be more cost-effective than court litigation, NCUA's contention that arbitration would be burdensome is subject to doubt. In addition, Goldman contends NCUA's assertion of an intention to seek coordination with related actions is belied by the fact that NCUA opposed a motion filed by defendants in actions related to this case to consolidate certain NCUA actions into a multi-district litigation proceeding. Neither argument is persuasive. As for the cost-effectiveness of arbitration, there are nonetheless many reasons why NCUA might reasonably find it burdensome. As for consolidation, there is no inconsistency between a desire to obtain some coordinated litigation, such as the coordinated discovery obtained in this case, and opposition to consolidation and transfer of several cases to another district pursuant to an order of the Judicial Panel on Multidistrict Litigation. *See* 28 U.S.C. § 1407.

Case 1:13-cv-06721-DLC Document 162-2 Filed 02/15/20 Page 18 of 19
Case 14-312, Document 157, 02/03/15, 1435317, Page18 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

1   October 2010, when Southwest was placed into liquidation, the Center obtained a

2   spreadsheet from Southwest with over 1,900 entries, supposedly listing all of Southwest's

3   contracts, including those with Goldman. Additionally, the Center "obtained and

4   reviewed copies of contracts maintained by Southwest to determine which contracts

5   should be repudiated, transferred . . . or otherwise terminated." JA 182. In so doing, the

6   Center did not discover any additional contracts with Goldman beyond those listed on the

7   spreadsheet. The CAA was not among the entries on Southwest's spreadsheet, nor did the

8   Center discover the CAA in Southwest's files. Richter declared that, to her knowledge,

9   NCUA was not aware of the CAA until Goldman disclosed it during this litigation.

10      Goldman contends NCUA's delay was unreasonable because it should have known

11  that the materials it obtained from Southwest were incomplete. NCUA had in its

12  possession confirmations reflecting Southwest's purchase of the RMBS involved in this

13  lawsuit. Goldman characterizes these confirmations as contracts that should have been

14  listed on Southwest's spreadsheet, but were not. Thus, Goldman argues, NCUA should

15  have realized that the spreadsheet was incomplete and, based on NCUA's experience with

16  RMBS investments, that Southwest must have had account agreements for the RMBS

17  investments not shown on the spreadsheet, which, in the exercise of diligence, NCUA

18  needed to find.

19      Goldman's artful Monday-morning quarterbacking is not persuasive. On the basis

20  of the evidence set forth in the district court, NCUA's lack of awareness of the CAA, and

21  its consequent delay in repudiating it, cannot be deemed unreasonable. The evidence in

Case 1:13-cv-06721-DLC Document 157 Filed 02/03/15 Page 19 of 19

14-312-cv
National Credit Union Administration Board v. Goldman, Sachs & Co.

no way suggests that NCUA was dilatory or in bad faith. Once Goldman brought the

CAA to NCUA's attention on October 8, 2013, NCUA repudiated the contract within

nine days. Given NCUA's excusable unawareness of the CAA until Goldman disclosed it,

we reject Goldman's challenge to the timeliness of the repudiation.

## CONCLUSION

For the reasons stated above, the district court's order denying Goldman's motion to compel arbitration is AFFIRMED.